IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRY PERKINS, | ) | |
|       Plaintiff, | ) | |
| vs. | ) | No. 3:21-CV-1402-D (BH) |
| | ) | |
| DALLAS COUNTY SHERIFF'S | ) | |
| DEPARTMENT, et al. | ) | |
|       Defendants. | ) | Referred to U.S. Magistrate Judge[1] |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, all of the plaintiff's claims should be **DISMISSED**, except for his excessive force claim against Officer Harrys in his individual capacity.

## I. BACKGROUND

Terry Perkins (Plaintiff), an inmate in the Dallas County Jail, sues the Dallas County Sheriff's Department (DCSD), the Dallas County Jail System, and "C.O. Harrys" (Officer) under 42 U.S.C. § 1983 for alleged use of excessive force while he was being booked into the jail on May 16, 2021. (*See* docs. 3, 7, 9, 15, 22, 24.)

Plaintiff alleges that because he had "just got out of Baylor" with two broken ribs, he was in pain and having trouble standing during his book-in at Dallas County Jail, so he asked Officer for a wheelchair. (doc. 7 at 4; doc. 9 at 4; doc. 24 at 1.)[2] Officer rolled his eyes and walked away. (doc. 24 at 1.) Officer then told Plaintiff to "come up" to have his hand prints taken, and when he asked how he could do that when he was still in handcuffs, Officer twisted Plaintiff's arm. (*Id.*) Plaintiff yelled, "you hurting me stop my ribs are broken [sic]." (*Id.*) Other officers gave Plaintiff's "papers" to Officer, who looked at them and said there nothing wrong with Plaintiff. (*Id.*) Officer again

---

[1] By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for judicial screening.

[2] Citations to the record refer to the CM/ECF system number at the top of each page rather than the page numbers at the bottom of each filing.

twisted Plaintiff's arm, threw him to the floor, and "got on" his back; other officers came to help. (*See* doc. 7 at 4; doc. 9 at 4; doc. 24 at 1.) Afterwards, Plaintiff started coughing up blood, his arm was out of place, and he could not stand up, so someone gave him a wheel chair and rolled him to see the nurse. (*See* doc. 24 at 1.) The "staff" failed to send him to "acc," however, and instead locked him up like he "did something wrong." (*See* doc. 7 at 4; doc. 9 at 4.) He was not given any treatment after the incident, and he was still being "violated by retaliation everyday" by jail staff at the time he filed suit. (*See* doc. 7 at 4; doc. 9 at 4; doc. 22 at 5.)

Plaintiff alleges that the use of force dislocated his arm, caused him to cough up blood, caused bruising and general ongoing pain that prevented him from sleeping for several months, caused him mental pain and suffering and PTSD, broke more of his ribs, and prevented his side from healing. (*See* doc. 7 at 4; doc. 9 at 4; doc. 15 at 8; doc. 22 at 4; doc. 24 at 1). He seeks $30,000,000 in damages. (*See* doc. 7 at 4; doc. 9 at 4; doc. 15 at 8.)

## II. PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A claim fails to state a claim upon which relief may be granted when it fails to plead "enough

2

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### III. SECTION 1983

Plaintiff sues under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A.    Dallas County Sheriff's Department**

To the extent that Plaintiff sues the DCSD, it is well-established that it is not a jural entity subject to suit. *See*, *e.g.*, *Bell v. Dallas County Sheriff's Dep't*, No. 3:16-CV-3415-L-BH, 2019 WL 4418227, at *2 (N.D. Tex. Aug. 19, 2019*) rec. accepted*, 2019 WL 4412740 (N.D. Tex. Sept. 13, 2019); *Edwards v. Dallas County Jail Med. Dep't*, No. 3:07-CV-0886-G, 2007 WL 2687615, at *2 (N.D. Tex. Sept. 13, 2007) (holding that the Dallas County jail is not a jural entity subject to suit); *Magnett v. Dallas County Sheriff's Dep't*, No. 3:96-CV-3191, 1998 WL 51355, at *1 (N.D. Tex. Jan. 20, 1998) (holding that the Dallas County Sheriff's Department is not a jural entity that can be sued). Any claims against this defendant should be dismissed for failure to state a claim.

**C.    Officer**

3

Plaintiff sues Officer in both his individual and official capacities. (*See* doc. 22 at 1.)³

### 1.   *Official Capacity Claims*

A claim against Officer in his official capacity is the same as a claim against his employer, Dallas County. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Olidbas v. Dodson*, 593 F. App'x 412, 413 n.1 (5th Cir. 2015) (per curiam) ("[I]t is well-settled that claims against a municipal officer in his official capacity are claims against the county."); *see also Bell*, 2019 WL 4418227, at *2 (treating official-capacity suit against Dallas County jail librarians as suit against Dallas County).

Municipalities, including counties, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under [§] 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices

---

³ Plaintiff's answers to a magistrate judge's questionnaire constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95. "Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

"The description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept's*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).

Plaintiff does not allege an official policy or custom that resulted in a violation of his rights. He has therefore failed to state a claim for municipal liability, and any § 1983 claims against Officer in an official capacity should be dismissed.

### 2.   *Individual Capacity Claims*

5

Plaintiff's excessive force claim arises under either the Eighth or Fourteenth Amendment, depending on whether he was a pretrial detainee or a convicted prisoner at the time of the alleged excessive force. *See Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). Although his status is unclear from the record, the standard is the same under both amendments. *See id.* In an excessive force case, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)); *accord Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (emphasizing that the inquiry is "not whether a certain quantum of injury was sustained"). This inquiry has two components—an objective one that focuses on whether the alleged wrongdoing was harmful enough to violate the Constitution, and a subjective one that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8. When considering the objective component, courts must look to the nature of the force used, i.e., "whether it was nontrivial," not the extent of the injury sustained. *Wilkins*, 559 U.S. at 39 & n.2; *accord Hudson*, 503 U.S. at 8-10. Excessive force "necessarily excludes...*de minimus* uses of physical force, provided that the use of force is not of the sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted). To state an Eighth Amendment claim, though, the prisoner must have "suffered at least some injury." *See, e.g., Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007) (per curiam).[4]

Plaintiff's factual allegations are sufficient to survive judicial screening. He claims that

---

[4] Similarly, under the Prison Litigation Reform Act, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C § 1997e(e). The Fifth Circuit has determined that "the 'physical injury' required by § 1997e(e) 'must be more than *de minimus* [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citation omitted).

during his book-in at the Dallas County Jail, "just" after he left "Baylor" with two broken ribs, he asked for a wheel chair and asked Officer how he could hold out his hand to be fingerprinted while he was still handcuffed. (*See* doc. 7 at 4; doc. 9 at 4; doc. 24 at 1.) Officer then allegedly twisted Plaintiff's arm, threw him to the floor, and got on his back. (*See* doc. 7 at 3-4; doc. 9 at 4; doc. 15 at 2; 4-7; doc. 24 at 1.) Plaintiff alleges that the use of force dislocated his arm, caused him to cough up blood, caused general, ongoing pain that prevented him from sleeping for several months, caused brusing, broke more of his ribs, and prevented his ribs from healing. (*See* doc. 7 at 4; doc. 9 at 4; doc. 15 at 7; doc. 22 at 4; doc. 24 at 1.) Based on the allegations in pleadings, which must be taken as true at this stage, there is no indication that the force was "applied in a good-faith manner to maintain or restore discipline." *Hudson*, 503 U.S. at 77. The implication is that the force was employed in response to Plaintiff's request for a wheelchair, or in response to his question about how he could have his hand printed when he was in handcuffs.

Further, the alleged force used was not "trivial" or *de minimus*. Plaintiff has alleged that he suffered an injury. The extent of injury is simply a factor to be considered in determining whether the use of force was warranted in the circumstances and as "some indication of the amount of force applied." *Id.* Taking Plaintiff's allegations as true, it is not apparent that any force was necessary, but even if his injury was not significant, this does not preclude an excessive force claim.

Accepting Plaintiff's allegations as true, and viewing them in the light most favorable to him as required by the standard of review, Plaintiff states an excessive force claim against Officer in his individual capacity for screening purposes.

C.  **Jail Staff**

Plaintiff vaguely suggests that he wishes to sue jail staff that were responsible for retaliating

against him and denying him medical treatment, but he does not name them, even in a John or Jane Doe capacity. (*See* doc. 22 at 7) (refusing to provide any information about the potential defendants involved in Plaintiff's medical care).

### 1. *Retaliation*

Plaintiff's filings may be liberally construed as alleging that jail staff retaliated against him. (*See* doc. 7 at 3-4; doc. 9 at 4; doc. 15 at 5.)

A prisoner must demonstrate the following to establish a claim for retaliation: "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). Conclusory allegations, including a prisoner's personal belief that he is the victim of retaliation, are insufficient to support a claim for retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). Instead, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (per curiam) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). In evaluating such claims, the Fifth Circuit has cautioned that "[p]risoners' claims of retaliation are regarded with skepticism" and should be "carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (per curiam) (citing *Woods*, 60 F.3d at 1166).

Plaintiff alleges that he is being "violated by retaliation everyday." ( doc. 7 at 4; doc. 9 at 4; doc. 22 at 5). To the extent that he is claiming that the jail staff retaliated against him for asking for a wheelchair, or any other reason, his claim is meritless. He does not allege "a chronology of events

8

from which retaliation may plausibly be inferred." *Haddix*, 203 F. App'x at 554. He alleges jail staff did not send him to "acc" in a timely manner and "locked [him] up" at some unspecified time after his request for a wheelchair and the use of force. (*See* doc. 7 at 4; doc. 9 at 4.) Plaintiff does not allege that jail staff took these actions in close temporal proximity to his request for a wheelchair. Even if he had included that allegation, temporal proximity is not enough on its own to establish causation in this context. *See*, *e.g.*, *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 807, 808 (5th Cir. 2007) (finding that temporal proximity alone was not enough to show causation to prevail on employment-based First Amendment retaliation claim); *see also Robinson v. Director, TDCJ-CID*, Civil Action NO. 6:16cv202, 2016 WL 4577824, at *3 (E.D. Tex. Sept. 2, 2016) (rejecting prisoner's retaliation claim and noting that the mere sequence of events of a prisoner filing a grievance and then receiving discipline was insufficient to establish causation) (citing *Strong*, 482 F.3d at 808); *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) (noting that "*the post hoc ergo propter hoc* fallacy assumes causality from temporal sequence," which is a "false inference"); *Tampa Times Co. v. National Labor Relations Board*, 193 F.2d 582, 583 (5th Cir. 1952) (same). Plaintiff fails to state a retaliation claim against the unidentified jail staff.[5]

### 2. Denial of Medical Treatment

Plaintiff also alleges that he was not given medical treatment after the alleged use of force. (*See* doc. 15 at 7.)[6]

To succeed on a claim for damages for inadequate medical care, a plaintiff must demonstrate that there has been "deliberate indifference to serious medical needs" by prison officials or other

---

[5] Plaintiff's retaliation claim appears to be asserted only against the jail staff, and not Officer. If he is claiming that Officer also retaliated against him, the claim fails for the same reasons as it fails against the jail staff: it is conclusory.

[6] Plaintiff does not allege that Officer had anything to do with the lack of medical treatment.

9

state actors. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Only deliberate indifference, "an unnecessary and wanton infliction of pain...or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. *Id.* A prison official is liable for "deliberate indifference" "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

There are two requirements an inmate must satisfy to establish a constitutional violation based on inadequate medical care. *Farmer*, 511 U.S. at 832. If a court finds that either component is not met, it need not address the other component. *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quotation omitted). This objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To satisfy the second component, the plaintiff must establish that the defendant possessed a culpable state of mind. *Farmer*, 511 U.S. at 838 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, even if Plaintiff had named another defendant, and even assuming that Plaintiff's medical condition was objectively serious, there is no allegation that anyone knew that Plaintiff had

a serious medical condition and intentionally disregarded it. To the extent that Plaintiff is making a deliberate indifference claim premised upon a lack of medical treatment, the claim lacks merit and should be dismissed.

### IV. RECOMMENDATION

All of Plaintiff's claims, except for his individual-capacity excessive force claim against Officer Harrys, should be **DISMISSED** with prejudice for failure to state a claim under 28 U.S.C. §§ 1915A and 1915(e)(2)(B).[7]

**SO RECOMMENDED** on this 11th day of July, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] Because Plaintiff has filed three complaints and responded to three questionnaires to clarify his claims, he has alleged his best case, and further leave to amend is not necessary or warranted. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1997) (court need not give leave to amend where the court finds that the plaintiff has alleged his or her best case); *see also Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (affirming dismissal with prejudice where the *pro se* plaintiff's response to the questionnaire showed that he had pleaded his best case).

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                      _____
                      IRMA CARRILLO RAMIREZ
                      UNITED STATES MAGISTRATE JUDGE