IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRY PERKINS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:21-CV-1402-D (BH) |
| | ) | |
| TYRONE HARRIS, | ) | |
| Defendant. | ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Motion for Summary Judgment Based on Qualified Immunity of Defendant Tyrone Harris*, (doc. 67) filed January 19, 2023, should be **GRANTED**.

## I. BACKGROUND

Terry Perkins (Plaintiff) sues a detention services officer for alleged use of excessive force. He claims that as he was being booked into the Dallas County Jail, he asked for a wheelchair because he had recently gotten out of the hospital with two broken ribs. (*See* doc. 7 at 4.)[2] Tyrone Harris (Defendant) allegedly "dunk[ed]" him, while handcuffed, to the floor—causing the side of his body with broken ribs to impact the floor—and jumped on his back. (*See id.* at 3-4.)[3]

In his most thorough description of the events in response to three separate questionnaires, Plaintiff claims that Defendant asked him to hold out his hand for fingerprinting, and he responded "how? I still cuff [sic]." (doc. 24 at 1.) Defendant then twisted his arm. (*Id.*) Plaintiff yelled, "you

---

[1] By order of re-reference dated July 27, 2022 (doc. 32), this *pro se* case was referred for pretrial management.

[2] Citations to the record refer to the CM/ECF system number at the top of each page rather than the page numbers at the bottom of each filing.

[3] Plaintiff filed a verified second amended complaint that is essentially identical to the first, except that it omits the allegation in the first amended complaint that Defendant jumped on his back. (*Compare* docs. 7, 9.)

1

hurting me[;] stop[;] my ribs are broken." (*Id.*) After another officer gave him Plaintiff's "papers", Defendant looked at them and said, "ain't s*** wrong with you; my ribs have been broken before." (*Id.*) Defendant then "twist my arm again[,] throw me to the floor [,and] got on my back." (*Id.*) As a result, Plaintiff coughed up blood, his arm was out of place, and he could not stand. (*Id.*) The use of force allegedly caused him severe pain, bruising, more broken ribs, loss of sleep and the ability to exercise for 3-4 months, nightmares, and "PTSD", and it took his body 3-4 months to heal because he was refused "proper medical attention." (*See* doc. 15 at 8, doc. 22 at 4-5.)

According to Defendant, he was performing intake duties in the Dallas County Jail on May 16, 2021, when Plaintiff was brought in, and he began processing him. (doc. 60 at 27-28.) He noticed that Plaintiff, who was handcuffed, was approximately six feet, five inches tall, and weighed around two-hundred and fifty pounds. (*Id.* at 28.) He did not recall Plaintiff stating that he had broken ribs, asking for a wheelchair due to pain, or having trouble standing. (*Id.*) He asked Plaintiff to place his hands where he could fingerprint them in accordance with Texas law and Dallas County Sheriff's Department (DCSD) policy, but Plaintiff did not. (*Id.*) Defendant reached for Plaintiff's hands, but he pulled them away. (*Id.*) Plaintiff had a belligerent attitude, and Defendant realized that Plaintiff was not going to cooperate or follow instructions. (*Id.*) Defendant did not think it would be safe to remove Plaintiff's handcuffs given his size and attitude, so he tried once more to get Plaintiff's fingerprints. (*Id.*) Defendant told Plaintiff to stand still so that he could get his fingerprints, and he used minimal force to grab Plaintiff's hands, but Plaintiff resisted by dropping to the floor and rolling around. (*Id.*) Another officer came to assist Defendant. (*Id.*) Defendant took Plaintiff's hands, and while using minimal force, held them as still as he could while Plaintiff was on the ground so that he could get good prints. (*Id.* at 28-29.) Plaintiff did not appear to be injured; Defendant would have arranged for immediate medical attention if he thought

Plaintiff had been hurt. (*Id.* at 29.) Defendant then sent Plaintiff to complete the standard medical screening required of all inmates. (*Id.*) He did not recall whether Plaintiff was given a wheelchair after he was fingerprinted. (*Id.*) One of Defendant's supervisors reviewed a video (which no longer exists) of the book-in process captured by the jail's security system, concluded that Defendant acted appropriately, and denied Plaintiff's grievance concerning Defendant's actions. (*Id.* at 8, 22, 29.)

Plaintiff filed a response to Defendant's summary judgment motion supported by an "affidavit" that is unnotarized and unsworn; it does not provide further detail about Defendant's use of force. (*See* doc. 71 at 3-4.)

## II. SUMMARY JUDGMENT STANDARD IN QUALIFIED IMMUNITY CASES

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis for its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008);

*Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633-34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Although courts view the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, 'or only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

Defendant has carried his burden by asserting the qualified immunity defense. *See Gates*, 537 F.3d at 419. Even though he has no burden to provide evidence, he has included affidavits and copies of pertinent policies and grievances. (doc. 60.) The burden now shifts to Plaintiff to identify evidence in the record creating a genuine issue of material fact regarding whether Defendants violated his constitutional rights, and whether the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls,* 500 F.3d 401, 407-08 (5th Cir. 2007).

### III. DEFENDANT'S OBJECTIONS

Defendant argues that the Plaintiff's "affidavit" in support of his response brief is not competent evidence because it is unnotarized and otherwise fails to meet the requirements of 28

U.S.C. § 1746 for an unsworn declaration under penalty of perjury. (*See* doc. 72 at 5.) Plaintiff's "affidavit" is not competent summary judgment evidence. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.") (quotation and citation omitted).

Defendant also appears to argue that "facts in the complaint" will not suffice to create a genuine issue of material fact. (*See* doc. 72 at 4.) Plaintiff's verified pleadings—including his amended complaint and responses to the three questionnaires[4]—are competent summary judgment evidence, however. *See*, *e.g.*, *Falcon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (finding that court erred in granting summary judgment on *pro se* prisoner's excessive force claim where the prisoner's allegations were supported by his verified pleadings, which "serve as competent summary judgment evidence") (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)); *see also Coker v. Gore*,---F.Supp.3d---, 2022 WL 3043407, at *7 (S.D. Tex. Aug. 2, 2022) (relying on the plaintiff's verified pleadings to establish an injury in the context of a qualified immunity summary judgment motion); *Stephenson v. Gray Cty. Sheriff Dept.*, 2:19-CV-222-Z-BQ, 2021 WL 5362089, at *3 (N.D. Tex. Sept. 28, 2021) (noting that the summary judgment record contained the *pro se* plaintiff's verified MJQ responses); *Jefferson v. Tran*, Case No. 3:20-CV-1770-M-BK, 2023 WL 2529931, at *4 (N.D. Tex. Feb. 28, 2023), *rec. accepted* 2023 WL 2799727 (N.D. Tex. Apr. 4, 2023) (relying on the *pro se* plaintiff's verified MJQ responses in the summary judgment context).

### IV. QUALIFIED IMMUNITY

Defendant moves for summary judgment on grounds that he is protected from suit by qualified immunity. (*See* doc. 67 at 1.)

---

[4] Plaintiff's responses to a magistrate judge's questionnaire are an amendment to his pleadings. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S.149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-pronged inquiry. Under the first prong, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether

6

a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

### A. Constitutional Violation

A claim "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham*, 490 U.S. at 396.[5] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To "prevail on a Section 1983 excessive force claim, 'a plaintiff must establish: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Shepherd v. Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014)) (quoting, in turn, *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)) (citing *Graham*, 490 U.S. at 393-97).

#### 1. Injury

To maintain an excessive force claim, a plaintiff need not show a significant injury, but the injury must be more than *de minimus*. *See Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005); *see also Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). The Fifth Circuit has characterized the injury requirement as "a sliding scale, not a hard cutoff." *Buehler v. Dear*, 27

---

[5] Plaintiff's excessive force claim arises under the Fourth Amendment. *See, e.g., Geils v. Patin*, 941 F.Supp.2d 722, 729-30 (N.D. Tex. 2012) (analyzing excessive force claim in the book-in area of the city jail under the Fourth Amendment); *Gay v. James*, No. 3:11-cv-2998-G, 2012 WL 1945618, at *4 (N.D. Tex. May 30, 2012) (finding that the Fourth Amendment applied because "the incidents of arrest were not completed, because [the plaintiff] was still in the book-in room when the officers took action [, and] the plaintiff's complaint suggests that the book-in process was still ongoing"); *Jackson v. Partington*, No. 3:14-CV-0360-B-BBH, 2015 WL 7566291, at *5-6 (N.D. Tex. Nov. 9, 2015), *rec. accepted* 2015 WL 7450495 (N.D. Tex. Nov. 24, 2015) (finding that the plaintiff's excessive force claim arose under the Fourth Amendment because the book-in process had not been completed, the plaintiff was still in the arresting officer's custody, and he was not yet in detention awaiting trial, let alone for a significant period of time) (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir. 1993)).

7

F.4th 969, 982 (5th Cir. 2022). "This approach treats the degree of injury—even if minor—as interrelated to the reasonableness and excessiveness of the officer's force." *Solis*, 31 F.4th at 981. "[A]lthough a *de minimis* injury is not cognizable, the extent of the injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Brown v. Lynch*, 524 F. App'x 69, 69 (5th Cir. 2013) (per curiam) (quoting *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996)). Accordingly, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* In other words, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* "This means that if the officer's force was unreasonably excessive, [Plaintiff] need only show 'some injury.'" *Solis*, 31 F.4th at 982.

Here, Plaintiff's verified questionnaire responses state that Defendant's use of force caused him to suffer pain, more broken ribs, bruising, inability to sleep and to exercise for a few months, nightmares, an arm being "out of place," coughing up blood, and PTSD. (*See* doc. 15 at 8; doc. 22 at 4-5; doc. 24 at 1.) He alleges that it took his body 3-4 months to heal because he was "refused proper medical attention." (doc. 22 at 5.)  His claim that Defendant's use of force broke his ribs alleges an internal injury for which some objective medical evidence would be required to establish its diagnosis. *See*, *e.g.*, *Awnings v. Fullerton*, 912 F.3d 1089, 1098 (8th Cir. 2019) (refusing to credit the plaintiff's allegations of fractured ribs and a collapsed lung in an excessive force summary judgment motion where those injuries "were internal and required sophisticated tools to diagnose accurately"). He provides no such evidence here. Similarly, his allegation that the force caused PTSD is also unsupported by objective medical evidence showing a diagnosis. *See*, *e.g.*,

8

*Strickland v. City of Crenshaw, Miss.*, 114 F.Supp.3d 400, 416 (N.D. Miss. 2015) (finding that some form of medical evidence is generally required to establish a psychological injury in this circuit) (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004); *Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir. 1996) (en banc)). Plaintiff's verified allegations of bruising, pain, mental trauma, an "arm out of place," and a bloody mouth are sufficient to establish the minimal injury necessary to recover under the Fourth Amendment, however. *See Buehler*, 27 F.4th at 982 (concluding that abrasions, bruises on the triceps and head, and mental trauma, while minor, "are not so minor that his excessive force claim fails as a matter of law," but the minor nature of the injury supported the officer's reasonableness argument); *see also Schmidt v. Gray*, 399 F. App'x 925, 928 (5th Cir. 2010) (per curiam) (complaints of bruising, pain, and soreness resulting from an officer's clamming a car trunk's lid on a suspect's finger was a legally cognizable injury).

Although constitutionally cognizable, courts have found similar injuries to be minor. *See, e.g.*, *Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018) (holding that abrasions, bruises, bloody urine, and high blood pressure were *de minimis* injuries); *Buehler*, 27 F.4th at 982 (holding that abrasions to the face, head and tricep, bruises, and mental trauma were minor injuries). Further, Plaintiff proves no evidence that he sought medical treatment for his injuries. *See Solis*, 31 F.4th at 982; *Buehler*, 27 F.4th at 983. He provides no coherent allegation of any medical treatment that he received, much less medical records. Nor are Plaintiff's alleged psychological injuries entitled to much weight, as "[the Fifth Circuit has] rejected similar attempts by excessive-force plaintiffs to parlay their minimal injuries into more serious ones by tacking on allegations of psychological suffering." *Buehler*, 27 F.4th at 983; *see also Solis*, 31 F.4th at 982. Accordingly, the limited nature of Plaintiff's injuries does not support an inference that Defendant used force that was objectively unreasonable.

### *2. Clearly Excessive and Unreasonable Use of Force*

Plaintiff must also show that his injury "result[ed] directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph*, 981 F.3d at 331. Excessive force claims are "necessarily fact intensive," so courts must "examine the 'totality of the circumstances' to determine whether an officer's actions were objectively unreasonable." *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019) (citing *Deville v. Marcantel*, 567 F.3d 156, 157 (5th Cir. 2009) (per curiam); *Rockwell v. Brown*, 664 F.3d 985, 991-92 (5th Cir. 2011). "The intent or motivation of the officer is irrelevant; the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 396-97); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 391-92 (2015). Courts consider only the facts "knowable to the defendant officers" at the time the officers used force and must "avoid 'second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation.'" *Garza*, 943 F.3d at 745 (citations omitted).

*Graham* identifies several factors bearing on the reasonableness of force: with "careful attention to the facts and circumstances of each particular case," courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted). They consider "not only the need for force, but also the relationship between the need and the amount of force used." *Joseph*, 981 F.3d at 332 (quoting *Deville*, 567 F.3d at 167). "Faced with an uncooperative arrestee, officers properly use 'measured and ascending actions that correspond to [the arrestee's] escalating verbal and physical resistance.'"

*Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (quoting *Joseph*, 981 F.3d at 332) (further citation omitted).

Here, it is not disputed that Plaintiff was handcuffed, restrained, and being booked into the jail when the alleged use of force occurred. (*See* doc. 60 at 27-28). Based on his own description of the events, Plaintiff's attitude could be characterized as belligerent, and he does not dispute that he failed to put forward his hands as requested so Defendant could fingerprint him and pulled his hands away when Defendant grabbed them. (*See id.* at 28; doc. 24 at 1 (when asked to extend his hand for fingerprinting, Plaintiff responded "how? I still cuff [sic]")).

What is disputed is the amount of force that Defendant used in response to that resistance. Plaintiff claims that Defendant twisted his arm twice, threw him to the ground, and then "got on" or jumped on his back. (doc. 24 at 1.) Defendant claims that he asked Plaintiff to stand still so that he could fingerprint him and used "minimal force" to grab Plaintiff's hands and fingers, but Plaintiff dropped to the floor and rolled around. (doc. 60 at 28.) Although at first blush this factual dispute might appear to preclude summary judgment, closer inspection reveals that it is not a material or genuine dispute. Even accepted as true, Plaintiff's version of the facts is insufficient to permit a reasonable jury to return a verdict in his favor. *See Joseph,* 981 F.3d at 330. He has failed to bring forward sufficient facts upon which a jury could find that Defendant's use of force was clearly excessive to the need and that the excessiveness of the force was objectively unreasonable. *See Rockwell*, 664 F.3d at 991.

Despite opportunities to clarify the amount of force used through three questionnaires and to present evidence in opposition to the summary judgment motion regarding the nature of the force used, Plaintiff's verified allegations of the actual force used are vague, conclusory, and inconsistent. His amended complaint states only that Defendant "dunk[ed]" him to the floor and

jumped on his back. (doc. 7 at 3.) His most thorough account of what happened, in his third questionnaire response, states only that Defendant "twist my arm" twice and "throw me [sic] to the floor [and] got on my back." (doc. 24 at 1.) Plaintiff does not describe how or with what force Defendant twisted his arm, or for how long. He does not describe how Defendant "thr[e]w" him to the ground or the amount of force he used to take him to the ground. He does not explain how Defendant "got on" or jumped on Plaintiff's back, i.e., whether Defendant used his whole body or only some part, or how long Defendant was on his back. Nor does he attribute any of his alleged injuries to the specific use of force.

It is well established that "[u]nsubstantiated or conclusory assertions" are insufficient to defeat summary judgment. *Arnett v. Strayhorn*, 515 F.Supp.2d 690, 694 (W.D. Tex. May 16, 2006) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) and *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)); *see also Fullman v. Graffick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment[.]"). In *Rodriguez v. Cty. of Nassau*, 18-CV-03845 (JMA) (JMW), 2023 WL 2667076, at *9 (E.D.N.Y. Mar. 28, 2023), the court found that a plaintiff failed to raise an issue for trial where the "only evidence in the record" regarding the alleged excessive force was a single sentence in his complaint that he "received unspecified 'injuries to his neck, back, both arms, ankle and head [from] Defendants kicking him, stepping on his ankle and pulling him down the stairs.'" In addition to finding that there was insufficient evidence of an injury and of which officer applied the force, the court specifically found that "[t]his single sentence is insufficient for a jury to conclude that Plaintiff was subjected to excessive force." *Id.*; *see also Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995) (plaintiff's abstract and generalized assertions that an officer "threw [him] to the ground" and that he "was thrown to the ground forcibly" were insufficient to defeat a

summary judgment motion as they did not give the "slightest hint" about the amount of force that the officers used (internal quotation marks omitted); *McMillian v. LeConey*, No. 5:09-CV-175-BR, 2011 WL 2144628, at * (E.D.N.C. May 31, 2011) (granting summary judgment in excessive force case because the plaintiff's only allegations of the force used—specifically that the officer "slammed" the plaintiff's head into a wall and "then onto the ground"—"are so conclusory and devoid of facts and circumstances that they do not warrant the burden or expense of a jury trial"); *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616 (E.D. Tenn. Dec. 12, 2005) (dismissing excessive force claim after finding that the plaintiff responded to summary judgment motion on qualified immunity with only vague and conclusory allegations of excessive force and he failed to provide any proof or detail surrounding the incident complained of or the unreasonableness of the officers' force against him). The reasoning in these out of district cases is persuasive and support the conclusion that Plaintiff's vague allegations of the use of force are likewise insufficient to meet his summary judgment burden.

Further, Plaintiff presents no evidence, or even argument, from which a reasonable jury could conclude that the force was excessive to the need. Notably, Plaintiff does not allege that he was not or had stopped resisting Defendant's efforts to fingerprint him at the time of the alleged use of force. When analyzing a use of force in relation to the need, an important factor is how quickly the officer resorts to the force used. *See Trammell*, 868 F.3d at 341. ("This Court has several times found that the speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need.") (citing *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (holding that disputes of fact were material because "a reasonable jury could find that the degree of force used was not justified where the officer 'engaged in very little, if any, negotiation' with the suspect and 'instead quickly resorted to'" force); *Deville*, 567 F.3d at 168

(determining that "[a] reasonable jury could infer from [the plaintiff's] deposition testimony that [the defendant officer] engaged in very little, if any, negotiation with [the plaintiff]—and find that he instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle")). Plaintiff's vague and brief account of what happened does not indicate with any specificity the quickness with which Defendant resorted to force. There are no facts upon which a jury could find that his use of force was sudden and not the required "measured and ascending" action calibrated to Plaintiff's conduct. *See Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010) (per curiam).

Plaintiff has failed to meet his burden to show that "there is a genuine issue of material fact and that a jury could return a verdict entitling [him] to relief for a constitutional injury." *Joseph*, 981 F.3d at 330.

### B. Clearly Established Law

Even if Plaintiff had met his burden to establish a constitutional violation, he would still have to show that under his version of facts, Defendant's conduct violated clearly established law. *See id; see also Buehler*, 27 F.4th at 981 ("The plaintiff has the burden of showing that the unlawfulness of the defendant's conduct was clearly established at the time it occurred.") (citation omitted).

"There are two ways to demonstrate clearly established law." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). Under the first approach, the plaintiff may "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances…was held to have violated the [Constitution]." *Id.* (citing *Joseph v. Barlett*, 981 F.3d 319, 330 (5th Cir. 2020) (quoting, in turn, *District of Columbia v. Wesby*, ---U.S.---, 138 S. Ct. 577, 590 (2018)). The Fifth

Circuit recently explained how the on-point-case analysis applies in the context of a Fourth Amendment violation:

> Rights are "clearly established" when "existing precedent 'squarely governs' the specific facts at issue," *Kisela v. Hughes*, ---U.S.---, 138 S. Ct. 1148, 1153, 200 L.Ed.2d 449 (2018) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 15, 136 S. Ct. 305, 193 L.E.2d 255 (2015) (per curiam)), *not* when a rule is merely "suggested by then-existing precedent," *City of Tahlequah v. Bond*, ---U.S.---, 142 S. Ct. 9, 11, 211 L.Ed.2d 170 (2021) (per curiam). The Supreme Court recently underscored the importance of specificity in the clearly-established-law inquiry when it reminded lower courts "not to define clearly established law at too high a level of generality." *Id.* Rather, courts must determine that existing precedent has rendered the right "beyond debate." *Rivas-Villegas v. Cortesluna*, ---U.S.---, 142 S. Ct. 4, 8, 211 L.Ed.2d 164 (2021) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam)).
>
> The hurdle is even higher when the plaintiff alleges a Fourth Amendment violation. As we have said elsewhere, in excessive-force cases requiring split-second judgments, it is "especially difficult" to overcome qualified immunity. *Morrow* [*v. Meachum*], 917 F.3d 870, 875 (5th Cir. 2019). That is because in the Fourth Amendment excessive force context, "it is sometimes difficult for an officer to determine how the relevant legal doctrine…will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12, 136 S. Ct. 305 (quotation omitted); *see Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989) (laying out the excessive-force inquiry, which "requires careful attention to the facts and circumstances of each particular case").

*Henderson v. Harris Cty.*, 51 F.4th 125, 132-33 (5th Cir. 2022).

"'The central concept is that of "fair warning": The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warnings that the conduct at issue violated constitutional rights.'" *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting, in turn, *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc))). "In other words, 'there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitely unlawful.'" *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020) (citation omitted).

15

Under the second approach, a plaintiff asks the court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 138 S. Ct. at 590). "[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021). The "standard for obviousness is sky high," however. *Joseph*, 981 F.3d at 338.

Here, Plaintiff first relies on *Darden v. City of Forth Worth*, 880 F.3d 722 (5th Cir. 2018), as an example of an officer acting under similar circumstances being found to have violated the Constitution. (*See* doc. 71 at 1-2.) In *Darden*, while executing a no-knock warrant at a private residence, officers "allegedly threw [Darden] to the ground, tased him twice, choked him, punched and kicked him in the face, pushed him into a face-down position, pressed his face into the ground, and pulled his hands behind his back to handcuff him," ultimately causing him to suffer a heart attack and die during the arrest. *Darden*, 880 F.3d at 725.

*Darden* involved far more severe force than may be inferred from even the most generous reading of Plaintiff's vague allegations. *See*, *e.g.*, *Craig v. Martin*, 49 F.4th 404, 419 (5th Cir. 2022) (relying on differences in the severity of the force the officer used in comparison to prior cases to find that the officer's force did not violate clearly established law); *Henderson,* 51 F.4th at 135 (same) (citing *Salazar v. Molina*, 37 F.4th 278, 287 (5th Cir. 2022)). The plaintiff's injuries were also much more severe. *See Flores*, 381 F.3d at 400 n.7 ("The extent of an injury is an element of an excessive force claim that must be clearly established in the second prong of the qualified immunity analysis.") (citing *Dunn v. Denk*, 79 F.3d 401, 403(5th Cir. 1996)). *Darden* does not

"'squarely govern the specific facts at issue,'" and therefore does not clearly establish that Defendant's conduct was unlawful. *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix*, 577 U.S. at 15.)

Plaintiff also points to *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008), which he claims establishes the principle that a certain degree of force is impermissible after an arrestee has been restrained and subdued. In that case, under the plaintiff's version of events, she was not resisting arrest or attempting to flee and was instead restrained, subdued and in handcuffs, when the defendant placed his hand behind her neck and head and slammed her face into the rear window of a nearby vehicle, injuring her jaw and breaking two of her teeth. *Bush*, 513 F.3d at 496.

Again, the force in *Bush* was more severe than what Plaintiff vaguely alleges here. The plaintiff's injuries were far more significant, and she incurred "significant medical expenses," while Plaintiff has not established that his injuries even required medical treatment. *Bush*, 513 F.3d at 501. Notably, Plaintiff was offering some resistance, even if passive, to being fingerprinted, and he never alleged that he did not resist or had stopped resisting at the time of Defendant's alleged use of force. *Bush* does not "'squarely govern the specific facts at issue'" and therefore does not clearly establish that Defendant's conduct was unlawful. *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix*, 577 U.S. at 15.)

Finally, Plaintiff does not argue that this is an obvious case of excessive force in which on-point case law is not required to overcome qualified immunity. Even if he had made that argument, given the minimal nature of his injuries, the vague and unclear nature of the force used and the events surrounding the use of force, and the fact that he was offering at least some degree of resistance, this is not the kind of exceptional case in which the use of force is obviously unreasonable considering the *Graham* factors alone.

Even accepting his version of events as true, Plaintiff has failed to show that Defendant's actions violated clearly established law.

## V. RECOMMENDATION

Defendant's *Motion for Summary Judgment Based on Qualified Immunity of Defendant Tyrone Harris* (doc. 67) should be **GRANTED**, and Plaintiff's excessive force claim against him should be **DISMISSED WITH PREJUDICE**.

**SIGNED on this 5th day of June, 2023.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE